**SMITH, Admr., Plaintiff, v. REES, Defendant.**

Probate Court, Franklin County.

No. 128630. Decided 1948.

418

ATTORNEYS: Ashbaugh, Elliott and Smith. Columbus.

HISTORY:—Proceedings to determine heirship instituted in probate court upon petition of the administrator with the will annexed of decedent's estate. For further history watch **Omnibus Index.**

### OPINION

By McCLELLAND, J.

### DECISION ON PETITION FOR DETERMINATION OF HEIRSHIP

This matters comes before the Court upon the application for a determination of the heirs of Washington T. Rees, who died March 14, 1914. At the time of the death of Mr. Rees he left his widow Eliza Rees, his son Ned Ellis Rees, and a daughter Bessie G. Drum, as the only persons who would have inherited his property under the laws of descent and distribution as it existed at that time. Mr. Rees died testate, but his will was not admitted to probate until the 28th day of April 1948.

In examining the record of the Estate of Washington T. Rees, we find that an affidavit was filed pursuant to the statute, which affidavit recites that Washington T. Rees died intestate, leaving as his next of kin Ned Ellis Rees, and Bessie G. Drum, and that he also left a widow Eliza Rees, who was entitled to a dower right in such property. Pursuant to this affidavit the real estate was transferred to Ned E. Rees and Bessie Drum, each receiving an undivided interest therein.

The will of Washington T. Rees was not discovered until a few days before its probate. This will of Washington T. Rees was admitted to probate by this Court on the 28th day of April 1948, and contains the following provisions:

"SECOND—After payment of my debts, funeral and testamentary expenses, I give and bequeath all the residue of my personal estate and effects which includes all growing crops and farm products, stored on the farm belonging to me at

my death, all live stock all vehicles, all household furniture, books moneys notes and all personal credits and property of a personal nature wherever found—to my dear wife Eliza Rees absolutely.

"Third"

I give and bequeath during the life of my wife Eliza Rees, the net annual profits and benefits of all my real estate to my wife Eliza Rees, Bessie Gertrude Drum and Ned Ellis Rees in the following proportion: To my wife Eliza Rees forty percent thereof, to Bessie Gertrude Drum thirty percent thereof to Ned Ellis Rees Thirty percent thereof. Payment of the foregoing to be made annually, and I appoint my son Ned Ellis Rees manager of all my real estate during the life of my wife Eliza Rees or until such time as it may be disposed of as hereinafter provided, and he is to have full authority to use his best judgment as to what is best to do for all parties concerned in said management, and to receive one hundred and twenty-five ($125.00) per year from the gross receipts of the real estate for his services as manager.

Provided always that should an emergency or necessity arise at any time during the lifetime of my wife Eliza Rees that a portion of the whole of my real estate be needed for the comfort and well being of my wife Eliza Rees or my daughter Bessie Gertrude Drum or my son Ned Ellis Rees; If the above named persons unitedly agree that such emergency or necessity exists—then I authorize them to sell and convey any or all my real estate and divide the proceeds from such sale into equal shares—one share to go to my wife Eliza Rees—one share to Bessie Gertrude Drum or her heirs—and one share to Ned Ellis Rees or his heirs.

Subject to the foregoing provisions of this item of my will, It is my wish that there be no distribution of my real estate during the life of my wife Eliza Rees.

"Fourth"

All the rest residue and remainder of any real estate unsold and belonging to my estate at the death of my wife Eliza Rees— I bequeath and devise to my daughter Bessie Gertrude Drum and my son Ned Ellis Rees their heirs and assigns forever share and share alike."

At the time of the death of the testator he was the owner of three tracts of valuable farm land in Franklin County, Ohio, the first one consisting of 133 acres, the second consisting of 28.4 acres and the third one consisting of 156.2 acres.

Eliza Rees the widow of Washington T. Rees, and to whom was bequeathed forty percent of the income from the estate,

died on December 18, 1918. Ned Ellis Rees is the son of the testator, and he died testate on December 27, 1917. Bessie G. Drum, the daughter of the testator died some years subsequent to the death of Eliza Rees, leaving neither children nor her husband surviving her. Ned Rees, who died December 27, 1917, left a will which was admitted to probate, by the terms of which he devised his entire estate to his widow Julia Rees. During the administration of the estate of Ned Rees, his undivided one-half interest in the real estate was transferred to his widow, Julia Rees. Subsequent thereto, Julia Rees sold her interest in the real estate and conveyed same to the purchaser. Julia Rees is under guardianship in this Court by virtue of physical incompetency.

At the death of Ned E Rees, in addition to his widow Julia Rees, he left a son Hubert D. Rees. This Court is now called upon to determine the character of the interests of Ned E. Rees and Bessie Drum under the will of the decedent, when the same vested by the terms of that will, and, whether Ned Ellis Rees had an alienable estate at the time of his death.

The first controversy or question arises by virtue of the language used by the testator in the second paragraph of the second item of his will. It is to be noted that by that language he does not devise any portion of the real estate: by the terms of that paragraph he simply bequeaths the net annual profits of the real estate during the life of his wife Eliza Rees, giving her forty percent thereof, and the son and daughter each thirty percent thereof. He appointed Ned Ellis Rees the manager of the real estate during the life of his widow, or, until such time as it could be disposed of if the emergency therein mentioned should arise. Apparently, that emergency did not arise for the reason that the real estate was not disposed of during the lifetime of Eliza Rees, and such powers of disposition which existed in the three legatees terminated at the death of the widow Eliza Rees. This statement is so well supported by the decisions of courts of Ohio, that we need not elaborate on same.

When we first considered this matter we were inclined to the opinion that Ned Rees was a trustee by virtue of his father's will, but we have now come to the conclusion that he did not create a trust in Ned Rees.

Referring to "A Trustee's Handbook by Loring," at Section one, we find the following language:

"The trusteeship, whether inter vivos or testamentary in origin, is not merely a contract to manage property for another, it is an historic legal relationship, constantly under the supervision of the Court of Chancery. The trustee is

not an agent for whose acts a principal will respond. Quite to the contrary, he is the legal owner of the property and as principal he bears full personal responsibility for his acts in the conduct of his ownership. He will be protected from discharging this personal responsibility out of his own pocket only if he has acted rightly and within the powers which he enjoys as trustee."

It is fundamental that a trustee must have an interest in the property and during the time he is trustee he has the legal title to the property, while the beneficiary has the equitable title thereto. Washington T. Rees by that paragraph conveyed no title to such property to Ned Ellis Rees. He therefore was not a trustee.

Neither did the testator create a life estate in his widow and his two children. All he did was to provide that his wife should have forty percent of the net income, and each of his children thirty percent thereof. The interests which the testator devised to the wife and children have none of the incidents of a life estate. The three were not charged with the payment of the taxes. They were not subject to having their interests terminated by waste. All they had was a certain percentage of the income from that property. Ned Rees was appointed manager of the property and as such he, under the terms of the will had only the possession of the property but no ownership of same.

The will further provides that at the time of the death of Eliza Rees the property should go to Ned Rees or his heirs, and to Bessie Drum or her heirs. The language of the last item referred to, together with the language in the preceding paragraph gives rise to the question as to whether the interests which Ned Rees and Bessie Drum had under the will vested at the time of the death of the testator or vested at the death of the widow of the testator. It is quite obvious that the interests which Ned Rees and Bessie Drum had was not a remainder. Under the law of Ohio a remainder must be preceded by a freehold estate. We have hereinbefore stated that the testator did not create a life estate in his wife or his children, or all of them.

In construing a will the Court must be governed by certain principles governing the construction of wills. The first principle is that the Court should ascertain the intention of the testator by reading the entire will. In doing this the Court should place himself, if possible, in the place of the testator, in order to ascertain that intention. Another prin-

ciple which must be observed is that wills should be so construed as to vest the interests therein conveyed at the earliest possible date. Did the interests which Ned Rees and his sister took under the will of their father vest at the time of his death, or did they vest at the time of the death of their mother, the widow of testator?

We must now allude to the language used by the testator as follows:

"Provided always that should an emergency or necessity arise at any time during the lifetime of my wife Eliza Rees that a portion of the whole of my real estate be needed for the comfort and well being of my wife Eliza Rees or my daughter Bessie Gertrude Drum or my son Ned Ellis Rees; if the above named persons unitedly agree that such emergency or necessity exists—then I authorize them to sell and convey any or all my real estate and divide the proceeds from such sale into equal shares to Bessie Gertrude Drum or her heirs—and one share to Ned Ellis Rees or his heirs."

It is quite obvious from reading the above language that if a contingency should arise the property should be sold. No one could determine whether that contingency could arise until and unless the three persons therein named unitedly agreed that the same had risen. Therefore, the matter of the sale was purely a contingency, and as long as the contingency could exist the vesting of the interests of Ned Rees and Bessie Gertrude Drum were contingent.

In our opinion the case of **Barr v. Denny, reported in 79th Oh St, page 358,** governs this situation. Had the testator provide that at the death of the widow, the property should be sold and the proceeds divided it would have been obvious that the principle laid down in the case of **Ohio National Bank v. Boone,** reported in **139 Oh St, page 361,** would apply, but inasmuch as the right of sale depended upon the contingency, this postponed vesting to some future time.

The last paragraph of the disposition portion of the will reads as follows:

"All the rest residue and remainder of any real estate unsold and belonging to my estate at the death of my wife Eliza Rees—I bequeath and devise to my daughter Bessie Gertrude Drum and my son Ned Ellis Rees their heirs and assigns forever share and share alike."

If this language were preceded by language which would create a life estate in the widow, or any other freehold estate

then we would be compelled to hold that the date of the death of the widow was only a date to which the enjoyment of the property would be postponed. This language was not preceded by language which created a freehold estate, and, inasmuch as the will contained a provision for a contingency under which it could be sold during the lifetime of the widow, we are compelled to hold that the estate did not vest until the death of the widow.

Inasmuch as we heretofore held that the interests which the two children took under the will was not a remainder, we must then decide what was the character of the interest which they received. It is our opinion that the language therein used created an executory devise. A definition of an executory devise is contained in Vol 19 American Jurisprudence, Section 96, where the author uses the following language:

"A general and comprehensive definition of an executory devise is a limitation by will of a future estate or interest in land which cannot, consistent with the rules of law, take effect as a remainder, or, as it is sometimes framed by the courts, such a limitation of a future estate of interest in lands as the law admits in the case of a will, although contrary to the rules of limitation in conveyances at common law. Such future interest has also been defined as a disposition of lands by will whereby no estate is vested at the death of the testator, but only on some future contingency, or, similarly, as a testamentary disposition of real property vesting the estate on the death of the testator, but only on future contingency.

As the United States Supreme Court has concisely stated the basic concept, every executory devise is upon some condition or contingency and takes effect only upon the happening of the contingency or the performance of the condition. Devises of this nature are called "executory", because the estates thereby limited to take place have no present existence, on contemplation of law, but merely a capacity of existence and of being executed, which devises take effect when the contingency upon which they are limited occurs."

At Section 49, page 510, Vol 33 American Jurisprudence, we find the following language used by the author in making a distinction between a remainder and an executory interest:

"Under the rules of the common law, remainders are distinguished from executory interests by the fact that a remainder may be limited only upon a preceding particular

estate, while an executory interest requires no particular estate to support it. A remainder estate arises immediately upon the termination of the particular estate and not in abridgment of it, while estates by way of executory devises arise when their time comes, of their own inherent strength, and when properly created do not depend for protection on any prior estate."

This same distinction is drawn by the author at Section 99, page 557 of Vol 19 American Jurisprudence.

The Court of Appeals of the Second District of Ohio, in the case of **Piper et al v. Lucey, reported in 21 Abs, page 661,** discusses the distinction between a contingent remainder and an executory devise. We quote from that opinion as follows:

"A very good definition of contingent remainder is given in **Sec. 98, 16 O. Jur., p. 479:**

"A contingent remainder is one where the estate in remainder is limited either to a dubious and uncertain person, or upon the happening of a dubious and uncertain event, so that the particular estate may chance to be determined and the remainder never take effect. It is the uncertainty of the right of enjoyment, and not the uncertainty of its actual enjoyment, which renders a remainder contingent. Where there is neither an immediate right of present possession nor a present fixed right of future possession, a remainder is contingent."

"The requirement as to the nature of the particular estate to support a remainder, either vested or contingent is authoritatively stated as follows:

" 'It is a fundamental rule of the common law that there can be no remainder unless there is a precedent particular estate which will necessarily terminate at some future time. It is essential to a remainder whether vested or contingent that it have a preceding or particular estate to support it. The continuance of the particular estate is essential to support a remainder and in case of the failure of the particular estate before the remainder can take effect the remainder is void.

" 'The preceding or particular estate in order to support a remainder although it must be less than a fee must be a certain and fixed right in the land which is carved out of the estate.'

**Vol. 16 O. Jur. (Estates) Sec. 110-111, pp. 489, 490.**

"The rule of law is also well established that where possible the contingent interest will be determined to be a contingent remainder rather than an executory devise.

"The nature and character of the estates are identical, but the rules applicable to executory devises are only invoked when necessary to carry out the intention of the testator.

"Again quoting from **16 O. Jur. (Estates) Sec. 137, p. 513,** we find the following:

" 'Executory devises were instituted in order to support and effectuate the intention of a testator concerning limitations of future estate which could not take effect as remainders, or other kinds of testamentary interests, consistently with rules of law. Thus, where a limitation, carved out of an estate by will, and falling within the denomination of a contingent remainder, has been defeated as a remainder by the lapse, or other failure, of the preceding estate, it may, by construction, be allowed to take effect as an executory devise, and be upheld as such, in order to effectuate the intention of the testator.'

"In support of the above text of the case of **Thompson v. Hoop, 6 Oh St 480** is cited in the notes. As we view it this case of Thompson v. Hoop, supra, is determinative of the instant case. While a very old case it is recognized as the leading authority on the subject in Ohio. The 4th syllabus reads as follows:

" 'Where a testator, after a devise of "the' plantation on which he was living", with all the property thereon to his widow, devised "the plantation" to one of his sons, from and after the death of the widow, the subsequent estate in case the life estate should fall by the widow declining to take under the devise, will not be defeated by the rules governing contingent remainders, but take effect as an executory devise.'

"The decision in this case was released in 1856. At that time the syllabus had not been declared to be the law of the case. The opinion by Bartley, C. J., very fully supports the syllabus as prepared by the reporter. In fact the opinion is a splendid treatise on the subject of contingent remainders and executory devise. The careful reading of that part of the opinion on pages 485, 486 and 487, leaves no room for doubt that under the facts of the instant case the minor defendants at the time of the probating of the will of the ancestor were given an estate either as a contingent remainder or an executory devise. As we view it even under the strict common law rule relative to contingent remainders the contingent interest of the minors would not be defeated for the reason that the particular estate supporting their contingent interest was the vested remainder of their father. The son of the testator was given a vested remainder sub-

426

ject to be divested on the contingency that he preceded his mother in death. That contingency happened and the contingent interest of the minors immediately vested. It was not the life estate of the widow of the testator that was the supporting estate of the minors. It was only through the death of the son that the contingent interest vested."

The foregoing case also discusses the case of **Thompson v. Thompson, reported in the 6th Oh St, page 481,** upon which case Judge Barnes relied in rendering his opinion.

We therefore come to the conclusion that Washington T. Rees created an executory devise in favor of his son and daughter, which did not vest until the death of his widow, who was the life beneficiary. It is to be noted that Ned Rees predeceased his mother by about one year. As far as the estate of Washington T. Rees is concerned, Ned Rees, during the lifetime of his mother, had no estate which he could alienate, either by deed or by will. His interest in the property coming from his father's will did not vest during his lifetime, and therefore did not pass under his will. It vested in his heirs, and inasmuch as he died in the year 1917, his widow was not his heir, but his son was.

It is therefore our opinion that his son Hubert D. Rees is entitled to the portion of the real estate which would have gone to Ned Rees had he survived his mother. An order may be drawn accordingly.